ACCEPTED
01-14-00990-CV
FIRST COURT OF APPEALS
HOUSTON, TEXAS
6/4/2015 3:48:07 PM
CHRISTOPHER PRINE
CLERK

**Case No. 01-14-00990-CV**

IN THE COURT OF APPEALS
FIRST JUDICIAL DISTRICT
HOUSTON, TEXAS

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS

6/4/2015 3:48:07 PM

CHRISTOPHER A. PRINE
Clerk

_____

DR. MANFRED FINK,
Appellant,
v.
JOANNA D. ANDERSON, et al.,
Appellees

_____

On Appeal from
the 152nd Judicial District Court
Harris County, Texas
Cause No. 2014-22740

_____

**BRIEF OF THE UNIVERSITY OF TEXAS, AUSTIN
AS AMICUS CURIAE SUPPORTING
APPELLANT DR. MANFRED FINK**

_____

KEN PAXTON
Attorney General of Texas

CHARLES E. ROY
First Assistant Attorney General

JAMES E. DAVIS
Deputy Attorney General for Civil
Litigation

ANGELA V. COLMENERO
Division Chief – General Litigation
Division

ERIKA M. KANE
Tex. Bar No. 24050850
Assistant Attorney General
OFFICE OF THE ATTORNEY GENERAL
General Litigation Division – 019
P.O. Box 12548
Austin, Tx. 78711-2548
(512) 463-2120
(512) 320-0667 (Fax)
erika.kane@texasattorneygeneral.gov

Attorneys for Amicus Curiae
The University of Texas-Austin

## Identity of Parties and Counsel

**Parties to the Trial Court Judgment:**

*Plaintiffs/Appellees:* Joanna D. Anderson, Betty Bailey, Doug Bird, Ann Brown, Brad Bullock, M.D., Jim Byron, Mike Clann, Claire Crowder, Evan Quiros, Paul Fulmer, M.D., Eric Geibel, Mark Gtiffin, Steve Gerguis, Stacey Harwey, Bill Henderson, Allen Holt, Linda Fludson, Cullen Kappler, Ralph Kirkland, Sam Lo, M.D., Thomas Lu, M.D., Gailer Miller Holt, Mary Quiros, Larry Sams, Bob Solberg, Lynn Whitt, and Clarissa Willis, M.D.

*Defendant/Appellant:* Dr. Manfred Fink, Ph.D.

**Counsel:**

*For Plaintiffs/Appellees*

Wade T. Howard
Michael P. Cash
Alma F. Gomez
LISKOW & LEWIS
1001 Fannin Street, Ste. 1800
Houston, Texas 77002
Tel (713) 651-2900
Fax: (713) 651.-2908
wthoward@liskow.com
mpcash@liskow.com
afgomez@liskow.com

*For Defendants/ Appellants*

H. MELISSA MATHER
Assistant Attorney General
State Bar No. 24010216
Financial Litigation, Tax, and
Charitable Trusts Division
P.O. Box 12548
Austin, Texas 78757-2548
Tel: (512) 475-2540
Fax: (512) 477 -2348
melissa.mather@texasattorneygeneral.gov

**INTEREST OF AMICUS CURIAE**

Amicus Curiae, the University of Texas at Austin (UT-Austin), has an interest in this case as a state employer. As such, UT-Austin has an interest in ensuring that the courts of this state properly interpret and apply immunity principles applicable to suits brought against state employees for acts arising out of their state employment, including the immunity from suit established in Tex. Civ. Prac. & Rem. Code § 101.106(f).

More particularly, the lower court's denial of the motion to dismiss filed by Dr. Manfred Fink was contrary to the Texas Supreme Court's decision in *Franka v. Velasquez*, which made clear that Tex. Civ. Prac. & Rem. Code § 101.106(f) serves to "foreclose suit against a government employee in his individual capacity if he was acting within the scope of employment." 332 S.W.3d 367, 381 (Tex. 2011). As the employer of Professor Fink, UT-Austin is of the position that the petition in this matter has alleged actions that arose within the general scope of Professor Fink's employment. Accordingly, UT-Austin has an interest in ensuring that its employee is not improperly subjected to litigation in a matter that should be deemed foreclosed under *Franka* and its progeny.

Neither UT-Austin nor any other party has paid any fee in connection with the preparation of this brief.

iv

# TABLE OF CONTENTS

INTEREST OF AMICUS CURIAE ...............................................................................iv

TABLE OF CONTENTS..............................................................................................v

INDEX OF AUTHORITIES........................................................................................vi

STATEMENT OF THE CASE.................................................................................... vii

ISSUES PRESENTED............................................................................................... vii

STATEMENT OF FACTS ...........................................................................................1

SUMMARY OF THE ARGUMENT ............................................................................1

ARGUMENT ...............................................................................................................2

    I.        UT-Austin professors assisting in the commercialization
                of UT-owned intellectual property act within the scope of
                their employment..................................................................................2

    II.      State employees are entitled to immunity for any act taken
                within the general scope of their employment for a government
                agency...................................................................................................5

    III.     Any fact dispute that may exist in this matter is not relevant
                to the disposition of Professor Fink's § 101.106(f) motion. ...............10

CONCLUSION AND PRAYER ..................................................................................12

CERTIFICATE OF COMPLIANCE..........................................................................14

CERTIFICATE OF SERVICE ..................................................................................15

APPENDIX

# INDEX OF AUTHORITIES

**Cases**

*Anderson v. Bessman*,
   365 S.W.3d 119 (Tex. App.—Houston [1st Dist.] 2011, no pet.) ........................6

*Best Steel Bldgs., Inc. v. Hardin,*
   553 S.W. 2d 122 (Tex. Civ. App—Tyler 1977, writ ref'd n.r.e.) ......... 6, 7, 11, 12

*Bull Bohnsack v. Varco*, L.P.,
   668 F.3d 262 (5th Cir. 2012) ...................................................................................8

*Dictaphone Corp. v. Torrealba,*
   520 S.W. 2d 869 (Tex. Civ. App.—Houston [14th Dist.] 1975, writ ref'd n.r.e.).6

*Franka v. Velasquez,*
332 S.W.3d 367 (Tex. 2011)......................................................................... 4, 5, 12

*Goodyear Tire & Rubber Co. v. Mayes*,
   236 S.W.3d 754 (Tex. 2007) ....................................................................................7

*Gulfcraft, Inc. v. Henderson*,
   300 S.W.2d 768 (Tex. Civ. App.—Galveston 1957, no writ)..........................7, 11

*Hopkins v. Strickland*,
   No. 01–12–00315–CV, 2013 WL 1183302
   (Tex. App.-Houston [1st Dist.] Mar. 21, 2013, no pet.) .........................................6

*Inter Mountain Mtge., Inc. v. Sulimen*,
   93 Cal.Rptr.2d 790 (Cal. App. 2000) ......................................................................8

*James v. Wall*,
   783 S.W.2d 615 (Tex. App.—Houston [14th Dist.] 1989, no writ) ......................3

*Lenoir v. Marino*,
   01-13-01034-CV, 2014 WL 6678947
(Tex. App.—Houston [1st Dist.] Nov. 25, 2014, no pet.) .......................................6

*Lenoir v. Moore*,
   Cause No. 01-13-01034-CV, 2014 Tex. App. LEXIS 12703 (Tex. App.—
   Houston [1st Dist.] November 25, 2014, no pet.) ...................................................9

*Minyard Food Stores, Inc. v. Goodman*,
   80 S.W.3d 573 (Tex. 2002) ......................................................................................8

*Quick v. Peoples Bank*,
   993 F.2d 793 (11th Cir.1993)...................................................................................8

*Steel Bldgs., Inc. v. Hardin*,
    553 S.W. 2d 122 (Tex. Civ. App—Tyler 1977, writ ref'd n.r.e.) ..........................9


**Statutes**

TEX. EDUC. CODE § 51.192 .................................................................................4

TEX. EDUC. CODE § 65.45 .................................................................................2

**Other Authorities**

http://www.otc.utexas.edu/ForInventors.jsp ............................................................3

http://www.utsystem.edu/sites/utsfiles/offices/board-of-regents/rules-
    regulations/30104.pdf ...................................................................................4

http://www.utsystem.edu/sites/utsfiles/offices/board-of-regents/rules-
    regulations/complete90000.pdf ..........................................................................3

Reporter's Notes, RESTATEMENT (THIRD) OF AGENCY § 7.07 (2006) ........................8

## STATEMENT OF THE CASE

Amicus Curiae adopts the Statement of the Case set forth in Appellant's Brief.

## ISSUES PRESENTED

I. Whether the court below erred in failing to grant Professor Fink's plea to the jurisdiction, because the petition failed to allege facts to demonstrate any of the acts at issue occurred outside the scope of Professor Fink's employment

**Case No. 01-14-00990-CV**

IN THE COURT OF APPEALS
FIRST JUDICIAL DISTRICT
HOUSTON, TEXAS

_____

DR. MANFRED FINK and DR. RAINER FINK,
Appellants,
v.
JOANNA D. ANDERSON, et al.,
Appellees

_____

On Appeal from
the 152nd Judicial District Court
Harris County, Texas
Cause No. 2014-22740

_____

**BRIEF OF THE UNIVERSITY OF TEXAS, AUSTIN
AS AMICUS CURIAE**

_____

Amicus Curiae University of Texas at Austin (UT-Austin) respectfully

submits this brief on behalf of Appellant Professor Manfred Fink's request that this

Court reverse the order denying his plea to the jurisdiction.

**STATEMENT OF FACTS**

Amicus Curiae adopts the Statement of Facts set forth in Appellant's Brief.

**SUMMARY OF THE ARGUMENT**

This Court should reverse the order of the court below and dismiss Professor

Fink from this suit pursuant to Texas Civil Practice and Remedies Code § 101.106(f)

1

because the acts committed by Professor Fink, as currently alleged, were acts within the general scope of Professor Fink's duties as an employee of UT-Austin. More specifically, the alleged acts occurred within the general scope of Professor Fink's duty as an employee of UT-Austin to support the commercialization of technology owned by UT and created within the course and scope of Professor Fink's employment with UT-Austin.

## ARGUMENT

### I. UT-Austin professors assisting in the commercialization of UT-owned intellectual property act within the scope of their employment.

As a premier research institution, UT-Austin encourages—and necessarily requires—its professors to continually seek to innovate. These efforts result in UT-Austin employees creating important intellectual property (IP) in the course of their employment with the university.

Because this IP often has great societal and monetary value, UT-Austin established the Office of Technology Commercialization (OTC) to oversee and facilitate the transfer of university discoveries to the marketplace. *See, e.g.,* TEX. EDUC. CODE § 65.45 (conferring on UT Board of Regents the power to enter into "agreements with individuals, corporations, partnerships, associations, and local, state, or federal agencies for funding the discovery, development, and commercialization of new products, technology, and scientific information"); *see also Affidavit of Juan M. Sanchez* ("Sanchez Aff.") ¶ 6, attached hereto at Appx. Tab

2

1 (explaining role of OTC). UT-Austin professors who invent valuable technology play an important part in ensuring the successful commercialization of University-owned IP by working in conjunction with the OTC, and such activities typically occur as part of the professor's employment with UT-Austin. *See* Sanchez Aff. ¶¶ 6-7; *see also* "For Inventors," website of UT Office of Technology Commercialization, *available at* http://www.otc.utexas.edu/ForInventors.jsp (explaining that the OTC provides "UT faculty with the resources, knowledge, and tools to protect and promote their discoveries" and that "[p]aramount" to the OTC's effort to maximize UT-Austin's research impact is OTC's "collaboration with UT researchers, industry, investors, and other strategic partners").

The UT Board of Regents has promulgated rules that establish that when, as here, a UT professor creates IP within the scope of his employment, that IP is owned by the UT Board of Regents. *See* University of Texas System Rules and Regulations of the Board of Regents, Rule 90102, Sec. 2.[1] Pursuant to these rules, the IP created by Professor Fink, which was licensed to IsoSpec, was owned by the UT Board of Regents because it was created during the course and scope of Professor Fink's employment with UT-Austin. CR 181. UT Board of Regents rules permitted

---

[1] UT's Board of Regent rules relating to IP created at the university are available at: http://www.utsystem.edu/sites/utsfiles/offices/board-of-regents/rules-regulations/complete90000.pdf. The Court may take judicial notice of these rules, as they have "the same force as would be a like enactment of the Legislature." *See James v. Wall*, 783 S.W.2d 615, 619 (Tex. App.—Houston [14th Dist.] 1989, no writ) (quotations omitted).

Professor Fink, as part of his UT-Austin employment, to provide input related to the commercialization of his invention. *See* University of Texas System Rules and Regulations of the Board of Regents, Rule 90101, Sec. 7. Board of Regents rules also make clear that UT retains "sole discretion" to make "final decisions concerning…how to…commercialize" any IP owed by the UT Board of Regents. *Id.* Additionally, Texas law permits a state university employee who invents university-owned IP to serve as an officer or employee of a business that has a licensing agreement concerning the IP. *See* TEX. EDUC. CODE § 51.192. However, state law mandates that this can only occur if the university employee publically reports any such business relationship with the licensee and the relationship complies with the university's conflict of interest policies. *Id.*; *see also* University of Texas System Rules and Regulations of the Board of Regents, Rule 90104. In the instant matter, no report exists to indicate that Professor Fink ever acted as an officer or employee of IsoSpec.[2]

Given the foregoing, Professor Fink's relationship with IsoSpec related to his employment with UT-Austin, because UT-Austin, not Professor Fink, had a direct relationship with IsoSpec through a licensing agreement. CR 181-83. To the extent

---

[2] To the extent a UT employee may wish to act as a paid consultant for a company that has licensed his technology, the UT Board of Regent has promulgated rules governing this type of "outside employment." *See* Rules and Regulations of the Board of Regents, Rule 30104, available at http://www.utsystem.edu/sites/utsfiles/offices/board-of-regents/rules-regulations/30104.pdf. Again, UT-Austin is not aware that any such outside employment agreement between Professor Fink and IsoSpec exists.

Professor Fink had involvement in the commercialization of the IP UT-Austin licensed to IsoSpec, that involvement was subject to UT Board of Regents rules, which grant UT-Austin authority over any activity related to the commercialization of IP owned by it.[3] *See* University of Texas System Rules and Regulations of the Board of Regents, Rule 90101, Sec. 7. As such, and as explained herein, the acts from which this suit arose fell within the general scope of Professor Fink's employment with UT-Austin.

## II. State employees are entitled to immunity for any act taken within the general scope of their employment for a government agency.

It is settled that that Texas Civil Practice and Remedies Code § 101.106(f) permits the dismissal of intentional torts alleged against a government employee acting within the general scope of their employment. *Franka,* 332 S.W.3d at 378. This Court recently explained that:

> "Scope of employment" is defined by the Texas Tort Claims Act as the performance "of a task lawfully assigned to an employee."…This definition is broader than the official immunity insulating state employees from liability. … Thus, an employee's scope of authority extends to job duties to which the official has been assigned, *even if the official errs in completing the task*."

---

[3] Appellees suggest that Professor Fink had a managerial or officer role in IsoSpec, citing to a "PPM" issued by IsoSpec and attached to Appellee's Brief. App'ee Brief at 8. By its own terms, however, the PPM does nothing to support an assertion that Professor Fink had any type of officer or employee role in IsoSpec itself, because the PPM merely lists Professor Fink as an "inventor" of the technology at issue. See App'ee Appx at 4, 7, 19.  As explained herein, as inventor of the IP at issue Professor Fink could provide information to IsoSpec about his technology, through his obligations as a UT-Austin employee to assist the OTC in the commercialization of the IP licensed to IsoSpec, without having to enter into an outside employment agreement with IsoSpec.

*Lenoir v. Marino*, 01-13-01034-CV, 2014 WL 6678947, at *10 (Tex. App.—Houston [1st Dist.] Nov. 25, 2014, no pet.) (internal quotations and citations omitted and emphasis added). This Court has further stated that "[i]f the purpose of serving the employer's business motivates the employee, his acts are within the scope of employment." *Anderson v. Bessman*, 365 S.W.3d 119, 126 (Tex. App.—Houston [1st Dist.] 2011, no pet.). This is true even if the employee brings improper, "personal motives" to bear in undertaking the act that forms the basis for suit against the employee. *See id.*; *see also Hopkins v. Strickland*, No. 01–12–00315–CV, 2013 WL 1183302, at *3 (Tex. App.-Houston [1st Dist.] Mar. 21, 2013, no pet.) (mem. op.) ("an act may still be within the scope of the employee's duties even if the specific act that forms the basis of the civil suit was wrongly or negligently performed, so long as the action was one related to the performance of his job").

Other courts in Texas have agreed that allegations that an employee committed an act primarily for personal reasons does not resolve the scope of employment inquiry. *See, e.g., Dictaphone Corp. v. Torrealba,* 520 S.W. 2d 869, 872 (Tex. Civ. App.—Houston [14th Dist.] 1975, writ ref'd n.r.e.) ("employee's arrangement of the performance of his duties in a manner consistent with his personal convenience does not take him out of the scope of his employment"); *Best Steel Bldgs., Inc. v. Hardin,* 553 S.W. 2d 122, 128 (Tex. Civ. App—Tyler 1977, writ ref'd n.r.e.) ("fact that the preponderate motive of the servant is to benefit himself or

6

a third person does not prevent the act from being within the scope of employment."). These courts have cited with approval language from the Restatement (Second) of Agency, which provides that the relevant inquiry for determining whether an act is within the general scope of employment is whether "the purpose of serving the master's business actuates the servant *to any appreciable extent.*" *Best Steel Bldgs*., 553 S.W. 2d at 128 (emphasis added). Similarly, an employee can be deemed to be acting within the scope of employment for a particular employer even when the act at issue occurred while the employee was serving multiple employers. *See, e.g., Gulfcraft, Inc. v. Henderson*, 300 S.W.2d 768, 773 (Tex. Civ. App.—Galveston 1957, no writ) (if alleged act was "within the general scope of [] employment of [one employer]...the fact that [employee] was simultaneously engaged in the furtherance of business of other employers does not change" the scope of employment determination).

Conversely, when an employee completely "deviates from the performance of his duties for his own purposes, the employer is not responsible for what occurs during that deviation," because it is outside the scope of employment. *See Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 757 (Tex. 2007) (employer not liable for car accident that occurred in company vehicle while employee was on an off-hours, entirely personal errand to buy cigarettes). Nevertheless, the Texas Supreme Court has held conduct may still be within the scope of employment if the act is

"referable to [a] duty owing" the employer, and that "[n]either express authorization nor subsequent ratification" of the employee's act by the employer is necessary to establish that an act as within the scope of employment. *Minyard Food Stores, Inc. v. Goodman*, 80 S.W.3d 573, 577 (Tex. 2002).

Moreover, it is not dispositive to the "scope of employment" inquiry under § 101.106(f) that the employee is charged with committing an intentional tort. Even suits where, as here, an employee is alleged to have acted with fraudulent intent can arise from acts within the scope of employment, so long as the act arose in the general course of performance of the employee's duties. *See, e.g.,* Reporter's Notes, RESTATEMENT (THIRD) OF AGENCY § 7.07 (2006) at c (citing *Quick v. Peoples Bank*, 993 F.2d 793, 798 (11th Cir.1993) and *Inter Mountain Mtge., Inc. v. Sulimen*, 93 Cal.Rptr.2d 790, 795 (Cal. App. 2000) as examples of cases where employee's fraudulent acts were deemed to be within scope of employment); *see also Bull Bohnsack v. Varco*, L.P., 668 F.3d 262, 274 (5th Cir. 2012) (alleged employee misrepresentations that form basis of fraudulent inducement claim can be deemed to have arisen within scope of employment).

Given the foregoing, in the instant case it matters not, at least for purposes of the § 101.106(f) scope of employment analysis at issue here, that Professor Fink is alleged to have "intentionally" misled Appellees about his technology because of a

personal, ill motive.[4] Rather, the critical question here in determining whether the alleged acts arose within the scope of Professor Fink's employment—as even Appellees recognize—is whether the acts "ar[ose] from the performance of the employee's authorized tasks" or "was otherwise foreseeable given the nature of the services the employee was engaged to perform on the employer's behalf." App'ee Brief at 15 (citing *Lenoir v. Moore*, Cause No. 01-13-01034-CV, 2014 Tex. App. LEXIS 12703, *25-27 (Tex. App.—Houston [1st Dist.] November 25, 2014, no pet.).

Here, Professor Fink's activities with respect to the UT-owned IP licensed to IsoSpec were subject to UT Board of Regents rules; these rules permitted Professor Fink to provide "input" related to the commercialization of the IP. *See* University of Texas System Rules and Regulations of the Board of Regents, Rule 90101, Sec. 7. Further, Professor Fink's provision of information about his invention to IP licensee IsoSpec is a type of activity UT-Austin professors may perform, in the scope of their employment, for purposes of assisting UT-Austin's OTC in the commercialization of University-owned technology. *See* Sanchez Aff. ¶¶ 6-7. Accordingly, the general

---

[4] For this reason, it is not relevant to the scope of employment inquiry that Professor Fink's son served on IsoSpec's board. See App'ee Brief at 17. That is, even if the Court assumes that Professor Fink's alleged acts were in part motivated by some intent to financially benefit his son, the alleged acts are still within the scope of employment if they were within the general scope of Professor Fink's employment duties. *See, e.g., Best Steel Bldgs., Inc. v. Hardin*, 553 S.W. 2d 122, 128 (Tex. Civ. App—Tyler 1977, writ ref'd n.r.e.) ("fact that the preponderate motive of the servant is to benefit himself or a third person does not prevent the act from being within the scope of employment.").

9

act alleged here—namely, Professor Fink's discussion at IsoSpec about the IP licensed to the company—was within the range of employment-related activities he might foreseeably perform in furthering the commercialization of the technology he invented within the scope of his employment with UT-Austin. *See id.*

### III. Any fact dispute that may exist in this matter is not relevant to the disposition of Professor Fink's § 101.106(f) motion.

Lest there be any doubt, UT-Austin disputes any allegation that Professor Fink, or any other person affiliated with UT-Austin, acted with any intent to mislead or defraud Appellees or any other person related to this matter. Regardless, any purported fact dispute that may exist between the parties about the intent underlying Professor Fink's alleged conduct is not pertinent to the inquiry here regarding whether Professor Fink was acting within the scope of employment when he spoke to potential IsoSpec investors about the technology he invented.

For example, Appellees attempt to create a fact issue by arguing that IsoSpec's petition in intervention below—in which IsoSpec alleges that Professor Fink's acts occurred "within the scope of his relationship with IsoSpec and in furtherance of IsoSpec's business"—creates a fact issue as to whether Professor Fink intended to act as an employee of IsoSpec when the alleged acts took place. App'ee Brief at 26. However, IsoSpec's petition in intervention creates no *relevant* fact issue. Rather, IsoSpec's assertion in its petition that Professor Fink had a "relationship" with the company is entirely consistent with Professor Fink's assertion that he was an

10

inventor of IsoSpec's technology and had a relationship with IsoSpec as a result of his employment with UT-Austin, the licensor of that technology.

Moreover, even if this Court assumes that Professor Fink was intending to act, in part, for the benefit of IsoSpec when the alleged acts occurred, that does not defeat Professor Fink's § 101.106(f) motion, because so long as the alleged act was "within the general scope of [Professor Fink's] employment of [UT-Austin]...the fact that [Professor Fink] was simultaneously engaged in the furtherance of business of other employers does not change" the scope of employment determination. *See Gulfcraft, Inc.*, 300 S.W.2d at 773. Instead, this Court must consider whether "the purpose of serving [UT-Austin's] business actuate[d Professor Fink's conduct] *to any appreciable extent*"; if it did, then the alleged act was within the general scope of Professor Fink's employment with UT-Austin and the claims against him must be dismissed under § 101.106(f). *See Best Steel Bldgs.*, 553 S.W. 2d at 128.

Here, Professor Fink's alleged conduct in attending meetings at IsoSpec was related, to an "appreciable extent," to the fact that: (1) UT-Austin licensed the technology at issue to IsoSpec and (2) Professor Fink was an employee of UT-Austin whose conduct was governed by UT Board of Regent rules.[5] Stated another way, the

---

[5] For this reason, it matters not to the scope of employment inquiry that Appellees allege that the Professor Fink's alleged acts were intended to assist IsoSpec in fundraising and UT-Austin disclaimed any interest in fundraising. *See* App'ee Brief at 24. This is because, even if Professor Fink's acts are deemed to have been motivated in part by an intention to fundraise for IsoSpec, he must still be found to have been acting within the scope of his employment with UT-Austin if his acts were related to his UT-Austin employment to any appreciable extent. See *Best Steel Bldgs.*,

11

undisputed facts in the record show that: (1) the technology licensed to IsoSpec was owned by UT-Austin due to Professor Fink's employment with UT-Austin and (2) Professor Fink's relationship to IsoSpec was as an employee of UT-Austin, who in turn acted as licensor to IsoSpec.

For the foregoing reasons, this Court should find that, for purposes of Professor Fink's § 101.106(f) motion to dismiss, Professor Fink's alleged acts occurred within the general scope of his employment with UT-Austin. Because of this, the claims against Professor Fink are barred under Texas Civil Practice and Remedies Code 101.106(f) and subject to dismissal. *See Franka,* 332 S.W.3d at 378.

## CONCLUSION

Amicus Curiae respectfully requests that this Court REVERSE the order of the Court below and DISMISS the claims made against Professor Fink.

---

553 S.W. 2d at 128. Here, because Professor Fink's relationship with IsoSpec was governed by UT Board of Regent rules regarding IP, his actions were motivated, to at least some "appreciable" extent, by his employment with UT-Austin.

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

CHARLES E. ROY
First Assistant Attorney General

JAMES E. DAVIS
Deputy Attorney General for Civil Litigation

ANGELA V. COLMENERO
Chief, General Litigation Division

s/ Erika M. Kane
ERIKA M. KANE
Texas Bar No. 24050850
Assistant Attorney General
Office of the Attorney General - 019
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711
(512) 463-2120
(512) 320-0667 FAX
erika.kane@texasattorneygeneral.gov

**CERTIFICATE OF COMPLIANCE**

According to Microsoft Word, this brief contains 2,940 words, excluding the

portions of the brief exempted by Texas Rule of Appellate Procedure 9.4(i)(1).

       /s/   Erika M. Kane
Erika M. Kane
Assistant Attorney General

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of this brief has been served via U.S. mail and electronic mail on all parties on June 4, 2014 by delivery to the following:

Wade T. Howard
Michael P. Cash
Alma F. Gomez
LISKOW & LEWIS
1001 Fannin Street, Ste. 1800
Houston, Texas 77002
Tel (713) 651-2900
Fax: (713) 651.-2908
wthoward@liskow.com
mpcash@liskow.com
afgomez@liskow.com
*Attorney for Appellees*

Timothy M. McDaniel, Esq.
IRELAN MCDANIEL, PLLC
440 Louisiana Street, Suite 1800
Houston, Texas 77002
Tel. 713-222-7666
Fax. 713-222.7669
tmcdaniel@imtexaslaw.com
*Attorneys for Defendant Dr.*
*Rainer Fink, Ph.D*

H. Melissa Mather
Office of the Attorney General
for the State of Texas
Financial Litigation, Tax, and Charitable
Trusts Division
P.O. Box 12548
Austin, TX 78711-2548
(512) 475-2540 – direct
(512) 475-2994 - fax
Melissa.Mather@texasattorneygeneral.gov
*Attorney for Appellant*

Andrew R. Harvin, Esq.
Peter Wells, Esq.
DOYLE, RESTREPO, HARVIN &
ROBBINS, LLP
The Lyric Centre
440 Louisiana, Suite 2300
Houston, TX 77002
Tel: 713-228-5100
Fax: 713-228-6138
aharvin@drhrlaw.com
PWells@drhrlaw.com
*Attorneys for Third-Party*
*Defendant William Hightower*

15

Arnold Anderson "Andy" Vickery, Esq.
Fred H. Shepherd, Esq.
THE VICKERY LAW FIRM
Park Laureate Building
10000 Memorial Drive, Suite 750
Houston, Texas 77024
Tel. 713-526-1100
Fax. 713-523-5939
*Via Email: andy@justiceseekers.com*
*Via Email: fred@justiceseekers.com*
*Via Email: karin@justiceseekers.com*
*Attorneys for IsoSpec Technologies, L.P.*

Paul Flack
PRATT & FLACK, LLP
1331 Lamar Street
Four Houston Center, Suite 1250
Houston, Texas 77010
Tel: (713) 936-2401
Fax: (713) 481-0231
*pflack@prattflack.com*
*Attorneys for Third-Party Defendant UBS*

 /s/   Erika M. Kane
Erika M. Kane
Assistant Attorney General

**Case No. 01-14-00990-CV**

IN THE COURT OF APPEALS
FIRST JUDICIAL DISTRICT
HOUSTON, TEXAS

_____

DR. MANFRED FINK,
Appellant,
v.
JOANNA D. ANDERSON, et al.,
Appellees

_____

On Appeal from
the 152nd Judicial District Court
Harris County, Texas
Cause No. 2014-22740

_____

**APPENDIX TO THE UNIVERSITY OF TEXAS, AUSTIN'S
AMICUS CURIAE BRIEF**

_____

KEN PAXTON
Attorney General of Texas

CHARLES E. ROY
First Assistant Attorney General

JAMES E. DAVIS
Deputy Attorney General for Civil
Litigation

ANGELA V. COLMENERO
Division Chief – General Litigation
Division

ERIKA M. KANE
Tex. Bar No. 24050850
Assistant Attorney General
OFFICE OF THE ATTORNEY GENERAL
General Litigation Division – 019
P.O. Box 12548
Austin, Tx.  78711-2548
(512) 463-2120
(512) 320-0667 (Fax)
Erika.Kane@texasattorneygeneral.gov

Attorneys for Amicus Curiae
The University of Texas, Austin

**INDEX TO UNIVERSITY OF TEXAS, AUSTIN'S
AMICUS CURIAE APPENDIX**

_____

TAB               DESCRIPTION

1.             Affidavit of Juan M. Sanchez

2.             UT Board of Regents Rules Governing Outside Employment
and Intellectual Property

# TAB 1

# AFFIDAVIT OF JUAN M. SANCHEZ

THE STATE OF TEXAS     §
                       §
COUNTY OF TRAVIS     §

I, Juan M. Sanchez, under penalty of perjury, declare as follows:

1.   I am over the age of twenty-one (21) years and am of sound mind. I have never been convicted of a felony or of a crime involving moral turpitude. I make this Affidavit of my own personal knowledge. All of the facts stated herein are true and correct. I could and would testify competently to the matters set forth herein if called upon to do so.

2. As Vice President for Research at the University of Texas at Austin ("University"), I serve as the chief officer responsible for supporting research across the University.

3. My office oversees research at the University, including identifying research opportunities and fostering ties to research sponsors and collaborators outside the University, as well as promoting emerging research opportunities in non-traditional areas.

4. I am submitting this affidavit in order to inform the Court of the University's position on the question of whether Manfred Fink, a tenured professor in the physics department, was acting in the general scope of his employment with the University when he allegedly attended a meeting at the request of a private company that had licensed certain inventions of Professor Fink's from the University.

5. Based on the information and circumstances described in Professor Fink's affidavit, dated July 10, 2014, it is the University's view that Professor Fink was acting in the general scope of his employment.

6. The relevant information for that determination is as follows:

   a. University faculty are unlike many employees in the sense that they have a wide range of discretion, both in the areas of scholarly inquiry they pursue, and over their day-to-day activities.

   b. The University hires its faculty with the expectation that they will pursue knowledge and the dissemination of knowledge, both for its own sake, and for the purpose of fulfilling the University's mission to lead through research, creative activity, scholarly inquiry, and the creation of new knowledge.

   c. As part of the University's efforts to share the knowledge generated here with our community and with people around the world, we have established an Office of Technology Commercialization (OTC), which works with faculty to find commercial uses for discoveries made here at the University. As part of that process, OTC works with faculty to prepare patent applications based on discoveries made by the faculty during the course of their University work. OTC also enters into licensing agreements with private companies to facilitate the commercialization of faculty inventions.

   d. Faculty who work with OTC to commercialize inventions made at the University may receive compensation through revenue-sharing with the University based on royalties earned by the invention. The University views a faculty member's cooperation with OTC as part of the professor's employment responsibilities to the University.

   e. No University policy prohibits the activity that Professor Fink engaged in, as described in his affidavit dated July 10, 2014, and I am aware of no facts that

would contradict Professor Fink's assertions that he believed he was acting for the benefit of the University in his communications with the University's licensee. While Dr. Fink should have first coordinated his communications with the licensee with OTC, his willingness to attend a meeting such as the one described in his affidavit in order to discuss technical information as it relates to his invention is neither unusual for faculty nor beyond what typical faculty may pursue as part of their academic and research work. Such meetings can both facilitate the exchange of information between faculty and other members of the scientific community and also inform faculty about questions and concerns relevant to their research, limitations with applications relevant to the science and areas for further research.

/ / /

/ / /

/ / /

7. It is important to the University, and our mission as an educational and research institution, that faculty have reasonable discretion in the performance of their research duties relating to the development and formulation of their independent scholarship. In my view, Professor Fink was acting consistent with what he believed were his responsibilities as a University professor and research scholar. While Professor Fink did not first coordinate his proposed activities with OTC, his actions were not so extreme as to fall outside of the kinds of employment activities in which our faculty engage. On behalf of the University, I ask that the Court take my opinion into account in making its legal conclusions.

FURTHER, AFFIANT SAYETH NOT.

_____
SIGNATURE

Juan. M. Sanchez
PRINTED NAME


SUBSCRIBED AND SWORN TO before me, the undersigned notary, on this ⟨11th⟩ day of ~~July~~ December 2014, to which witness my hand and seal of office.

[✓] personally known to me;
[__] proved to me on the oath of _____ who is a credible witness personally known to me; or
[__] proved to me through the following current identification care or other document issued by the federal government or any state government containing the photograph and signature of the acknowledging person:

_____
Notary Public in and for the State of Texas

My Commission expires: 3/15/2015

Notary Seal:_____

**AFFIDAVIT OF JUAN M. SANCHEZ** **PAGE 4**

# TAB 2

1.      **Title**

        Conflict of Interest, Conflict of Commitment, and Outside Activities

2.      **Rule and Regulation**

        Sec. 1    Primary Responsibility.  The primary responsibility of employees
                  of the U. T. System Administration and each of the U. T. System
                  institutions is the accomplishment of the duties and
                  responsibilities assigned to one's position of appointment.

        Sec. 2    Outside Work or Activity.  Employees may engage in work or
                  activity with outside entities and individuals, including
                  governmental agencies, industry, or other educational
                  institutions so long as such work or activity complies, as
                  applicable, with the approval and disclosure requirements of
                  Section 5 below and does not violate State laws or U. T. System
                  Administration or U. T. System institution rules or policies
                  governing the conduct of employees, including ethics standards
                  and provisions prohibiting conflicts of interest, conflicts of
                  commitment, and the use of State resources.

        Sec. 3    Unmanaged Conflicts of Interest Prohibited.  U. T. System
                  Administration and U. T. System institution employees may not
                  have a direct or indirect interest, including financial and other
                  interests, or engage in a business transaction or professional
                  activity, or incur any obligation of any nature that is in
                  substantial conflict with the proper discharge of the employee's
                  duties in the public interest.

        Sec. 4    Conflicts of Commitment Prohibited.  Activities on behalf of
                  outside entities or individuals must not interfere with a U. T.
                  System Administration or U. T. System institution employee's
                  fulfillment of his/her duties and responsibilities to the University.
                  Such conflicts of commitment may arise regardless of the
                  location of these activities (on or off campus), the type of
                  outside entity (individual, for-profit, not-for-profit, or
                  government), or the level of compensation (compensated or
                  unpaid).

        Sec. 5    Approval and Disclosure Requirements.  U. T. System
                  Administration and each institution shall adopt policies that
                  clearly delineate the nature and amount of permissible outside
                  work or activities. The policies shall include provisions to
                  prevent, identify, and manage conflicts of interest and conflicts

of commitment and shall include specific processes for disclosing such work or outside activities, as well as the procedures for obtaining and documenting institutional approval to carry out such engagements, consistent with this Rule.

5.1     Approval Required for Compensated Outside Work or Activity and for Outside Board Service.  No full-time member of the faculty or administrative and professional staff employed by the U. T. System or any of the institutions on a 12-month or nine-month basis shall be employed in any outside work or activity or receive from an outside source any compensation, or serve on an outside board until a description of the nature and extent of the employment or activity and the range of any compensation has been timely filed with and approved by the president of the institution, or his or her designee(s), or by the Chancellor or his or her designee(s) for U. T. System Administration employees, as set forth in the policies of the U. T. System or the *Handbook of Operating Procedures* of each institution. Filings and approvals for the presidents will be made to the appropriate Executive Vice Chancellor. Filings and approvals for the Chancellor, the General Counsel to the Board, and the Chief Audit Executive will be made to the Chairman of the Board.

5.2     Additional Financial Disclosures.  All officers and employees shall, in a timely manner, furnish such additional written financial disclosures as may be required by State or federal authorities or by U. T. System Administration or institutional authorities.

5.3     Electronic Database.  Disclosure of outside activity, documentation of requests for approval, and subsequent approvals required under Section 5.1, above, shall be maintained in an electronic database, following guidelines provided by U. T. System Administration.

Sec. 6     Free Advice.  Even in the case of employees specifically engaged only in residence work, there exists an obligation, usually intermittent, to furnish expert knowledge and counsel for public benefit free of charge, provided that the meeting of this obligation by an employee does not interfere with his or her regular duties, and provided further that in meeting this

obligation an employee shall avoid undue competition with legitimate private agencies.

Sec. 7     Separation of Activities. If a U. T. System Administration or U. T. System institution employee engages in any outside activity, the employee must make it clear to those who employ him or her that the work is unofficial and that the name of the U. T. System or any of the institutions is not in any way to be connected with the employee's name, except when used to identify the member as the author of work related to the employee's academic or research area as more fully described in Rule 90101 of the Regents' *Rules and Regulations* concerning general rules for intellectual property. No employee engaged in outside activities shall use in connection therewith the official stationery of the System, give as a business address any building or department of the U. T. System or any of the institutions, or any University telephone extension.

Sec. 8     Use of University Property. U. T. System Administration and U. T. System institutional property may only be used for State purposes appropriate to the System or institutional mission.

Sec. 9     Opinions for Advertising Purposes. Every employee must protect the U. T. System and U. T. System institutions against the use of opinions for advertising purposes.

Sec. 10    Noncompliance. Noncompliance with this Rule subjects an employee to disciplinary action, including termination, in accord with applicable procedures.

## 3.    Definitions

Compensation – any form of benefit including but not limited to salary, retainer, honoraria, intellectual property rights, or royalties, or promised, deferred, or contingent interest.[1]

## 4.    Relevant Federal and State Statutes

*Texas Government Code* Chapter 572 – Personal Financial Disclosure, Standards of Conduct, and Conflict of Interest

---

[1] Sponsored or reimbursed travel is included for consistency with Public Health Service regulations and UTS175 governing conflicts of interest in research [42 CFR Sec. 50.603, definition of "significant financial interest," at (2)]. It does not apply to travel that is reimbursed or sponsored by a Federal, state, or local government agency, an institution of higher education, an academic teaching hospital, a medical center, or a research institute that is affiliated with an institution of higher education.

5.      **Relevant System Policies, Procedures, and Forms**

Regents' *Rules and Regulations*, Rule 30103 – Standards of Conduct

Regents' *Rules and Regulations*, Rule 90101 – Rules for Intellectual Property: Purpose, Scope, Authority

The University of Texas System Office of General Counsel website on ethics

The University of Texas System Policy UTS118, *Statement of Operating Policy Pertaining to Dishonest or Fraudulent Activities*

The University of Texas System Policy UTS123, *Policy on Service on Outside Boards*

The University of Texas System Policy UTS134, *Code of Ethics for Financial Officers and Employees*

The University of Texas System Policy UTS175, *Disclosure of Significant Financial Interests and Management and Reporting of Financial Conflicts of Interest in Research*

The University of Texas System Policy UTS180, *Conflicts of Interest, Conflicts of Commitment, and Outside Activities*

The University of Texas System Administration Internal Policy INT129, *Outside Employment*

The University of Texas System Administration Internal Policy INT180, *Conflicts of Interest, Conflicts of Commitment, and Outside Activities*

6.      **Who Should Know**

Board of Regents
Employees

7.      **System Administration Office(s) Responsible for Rule**

Office of General Counsel

8.      **Dates Approved or Amended**

February 12, 2015

July 11, 2012
Editorial amendment to Numbers 4 and 5 made April 17, 2008
December 10, 2004

## 9.    **Contract Information**

Questions or comments regarding this Rule should be directed to:

- bor@utsystem.edu

1.      **Title**

Rules for Intellectual Property:  Purpose, Scope, Authority

2.      **Rule and Regulation**

Sec. 1     Purpose.  To balance the interests of the many contributors to the substantial creation of intellectual property at and by the U. T. System, the Board of Regents promulgates these Rules on intellectual property with the purpose to (a) provide certainty in research pursuits and technology-based relationships with third parties; (b) create an optimal environment for research, development, and commercialization opportunities with private industry; and (c) encourage the timely and efficient protection and management of intellectual property.

Sec. 2     Individuals Subject to this Rule.  This intellectual property Rule applies (a) to all persons employed by the U. T. System or any U. T. System institution, including, but not limited to, full and part-time faculty and staff and visiting faculty members and researchers, and (b) to anyone using the facilities or resources of the U. T. System or any U. T. System institution, including, but not limited to, students enrolled at a U. T. System institution such as in an undergraduate or graduate degree program or certificate program, and postdoctoral and predoctoral fellows. The Board of Regents automatically owns the intellectual property created by individuals subject to this Rule that is described in Sections 3, 5, and 6 below and in Rule 90102, Sections 2 and 3. Accordingly, all individuals subject to this Rule must assign and do hereby assign their rights in such intellectual property to the Board of Regents. Moreover, individuals subject to this Rule who create such intellectual property (creators) shall promptly execute and deliver all documents and other instruments as are reasonably necessary to reflect the Board of Regents' ownership of such intellectual property. A creator of intellectual property owned by the Board of Regents has no independent right or authority to convey, assign, encumber, or license such intellectual property to any entity other than the Board of Regents.

Sec. 3     Intellectual Property Included.  Except as set forth in Sections 4 and 5 below and Rule 90102 of the Regents' *Rules and Regulations*, this Rule applies to all types of intellectual property, including, but not limited to, any invention, discovery, creation, know-how, trade secret, technology, scientific or

technological development, research data, works of authorship, and computer software regardless of whether subject to protection under patent, trademark, copyright, or other laws.

Sec. 4    Interest in Certain Copyrights.  Notwithstanding Section 3 above, the Board of Regents will not assert an ownership interest in the copyright of scholarly or educational materials, artworks, musical compositions, and literary works related to the author's academic or professional field, regardless of the medium of expression. This exemption applies to works authored by students, professionals, faculty, and nonfaculty researchers. The Board of Regents encourages these creators to manage their copyrights in accordance with the guidelines concerning management and marketing of copyrighted works consistent with applicable institutional policies.

Sec. 5    Copyright Interest in Certain Software.  The Board of Regents asserts ownership in software; however, copyright in original software that is content covered by Section 4 above or that is integral to the presentation of such content shall be owned by the creator in accordance with Section 4 above.

Sec. 6    Works for Hire and Institutional Projects.  Notwithstanding the provisions of Sections 4 and 5 above, the Board of Regents shall have sole ownership of all intellectual property created by (a) an employee, student, or other individual or entity commissioned, required, or hired specifically to produce such intellectual property by the U. T. System or any U. T. System institution, and (b) an employee, student, or other individual as part of an institutional project. Except as may be provided otherwise in a written agreement approved by the institution or the U. T. System, the provisions of the Regents' *Rules and Regulations,* Rule 90102, Section 2.5, relating to division of royalties, shall not apply to intellectual property owned solely by the Board of Regents pursuant to this Section.

Sec. 7    Role of Creator.  Any person subject to this Rule who creates intellectual property (other than a work for hire under Section 6 above or on government or other sponsored research projects where the grant agreements provide otherwise) may give reasonable input on commercialization of inventions; provided however, that the president(s) of the applicable institution(s), or his or her designee(s), in his or her sole discretion, will make final decisions concerning whether and how to develop and commercialize an invention.

Sec. 8    Use of Facilities and Resources.  Neither the facilities nor the resources of the U. T. System or any U. T. System institution may be used (a) to create, develop, or commercialize intellectual property outside the course and scope of employment of an individual (see Regents' *Rules and Regulations,* Rule 90102, Section 1) or (b) to further develop or commercialize intellectual properties that have been released to an inventor (see Regents' *Rules and Regulations,* Rule 90102, Sections 2.2 and 2.3) except as the institution's president may approve where the U. T. System retains an interest under the terms of the release.

Sec. 9    Use of Research Data.  Research data or results created by an employee are owned by the Board of Regents and, except to the extent that rights to such research data are contractually assigned or licensed to another by the Board of Regents, the creator shall have a nonexclusive license to use such data for nonprofit educational, research, and scholarly purposes within the scope of the employee's employment, subject to adherence to other provisions of this Rule.

Sec. 10   Limited License to Institution.  Notwithstanding Section 4 above and as reasonably required for the limited purpose of continuing an institution's scheduled course offerings, the Board of Regents retains for one year following the loss of a course instructor's services, a fully paid-up, royalty-free, nonexclusive worldwide license to use, copy, distribute, display, perform, and create derivative works of materials prepared by the instructor for use in teaching a course (including lectures, lecture notes, syllabi, study guides, bibliographies, visual aids, images, diagrams, multimedia presentations, examinations, web-ready content, and educational software).

3.    **Definitions**

None

4.    **Relevant Federal and State Statutes**

*Texas Education Code*, Chapter 153 – Centers for Technology Development and Transfer

5.    **Relevant System Policies, Procedures, and Forms**

Regents' *Rules and Regulations,* Rule 90102 – Intellectual Property Rights and Obligations

Regents' *Rules and Regulations,* Rule 90103 – Equity Interests

Regents' *Rules and Regulations,* Rule 90104 – Business Participation and Reporting

Regents' *Rules and Regulations,* Rule 90105 – Execution of Legal Documents Related to Intellectual Property

Regents' *Rules and Regulations,* Rule 90106 – Income from Intellectual Property

6. **Who Should Know**

   Administrators
   Faculty
   Staff
   Students

7. **System Administration Office(s) Responsible for Rule**

   Office of General Counsel

8. **Dates Approved or Amended**

   Editorial amendment to Number 4 made December 8, 2014
   November 10, 2011
   Editorial amendments made October 6, 2011
   Editorial amendment to Sec. 4 made September 29, 2011
   February 8, 2007
   December 10, 2004

9. **Contact Information**

   Questions or comments regarding this Rule should be directed to:

   - bor@utsystem.edu

1.      **Title**

Intellectual Property Rights and Obligations

2.      **Rule and Regulation**

Sec. 1    Intellectual Property Owned by the Creator.  Intellectual property developed or created by a U. T. System employee outside the course and scope of employment of the individual which is developed or created on his/her own time and without the support of the U. T. System or any U. T. System institution or use of their facilities or resources, is the exclusive property of the creator.

Sec. 2    Intellectual Property Owned by U. T. System.  Intellectual property either developed within the course and scope of employment of the individual or resulting from activities performed on U. T. System time, or with support of State funds, or from using facilities or resources owned by the U. T. System or any U. T. System institution (other than incidental use) is owned by the Board of Regents. To effectively implement this Rule and provide certainty to individuals subject to this Rule, a U. T. System institution may promulgate institutional rules, regulations, or policies defining the course and scope of employment for persons or classes of persons and specifying that authorized (pursuant to existing rules and procedures) outside employment is or is not within an employee's course and scope of employment.

2.1    Determination of U. T. System's Interest.  Before intellectual property subject to ownership by the Board of Regents is disclosed to any party outside the U. T. System, to the public generally, or for commercial purposes, and before publishing same, the creator shall submit a reasonably complete and detailed disclosure of such intellectual property to the president of the creator's institution for determination of the U. T. System's interest. The institution will regularly and promptly communicate with the creator during this decision-making process.

2.2    Election Not to Assert Ownership Interest.  If the institution's president elects not to assert U. T. System's interest, the U. T. System Office of General Counsel and the primary creator shall be notified in writing within 20 business days after a decision is made not to assert

ownership rights that the institution will offer the released intellectual property to the creator (see Rule 90101, Section 8), except where prohibited by law or contractual obligations or requirements. Thereafter, the creator will be free to obtain and exploit a patent or other intellectual property protection in his or her own right and the U. T. System and U. T. System institutions shall not have any further rights, obligations, or duties with respect thereto except that, in appropriate circumstances, the institution's president may elect to impose certain limitations or obligations, including, but not limited to, a nonexclusive license for the creator, U. T. System, and any U. T. System institution to use the released invention for patient care, teaching, scholarly and other academically related purposes, and nonprofit research.

2.3     Later Release of Invention.  Except where prohibited by law or contractual obligations or requirements, the institution's president may elect to release an invention to its creator at any time after asserting U. T. System's interest, with notice to the U. T. System Office of General Counsel (see Rule 90101, Section 8); however, such a release must include provisions for the recovery by U. T. System of patent and licensing expenses, if any, as well as the retention of income rights by U. T. System, and may include certain limitations or obligations, including those set forth in Section 2.2 above.

2.4     Protection and Commercialization of Intellectual Property. With respect to intellectual property in which the U. T. System or any U. T. System institution asserts an interest, the institution's president, or his or her designee, shall decide how, when, and where the intellectual property is to be protected and commercialized. Outside counsel services may be contracted with the prior consent of the U. T. System Vice Chancellor and General Counsel and, if required by law, the approval of the Attorney General. U. T. System shall establish an intellectual property data collection system.

2.5     Reimbursement of Licensing Costs and Allocation of Income.  In those instances where the U. T. System or any U. T. System institution licenses rights in intellectual property to third parties, and other than with regard to elections under Section 2.2 above, the costs of licensing,

including, but not limited to, the costs to operate and support a technology transfer office and the costs of obtaining a patent or other protection for the property on behalf of the Board of Regents must first be recaptured from any royalties or other license payments received by the U. T. System or any U. T. System institution. The remainder of any such income (including but not limited to license fees, prepaid royalties, minimum royalties, running royalties, milestone payments, and sublicense payments) shall be divided as follows:

> 50% to creator(s)
> 50% to U. T. System,

provided, however, that a creator may disclaim his/her interest in such income, in which case the institution shall receive the creator's share and shall decide, in its sole discretion, if, how, and when to disburse such income.

With the prior approval of the Board and after review by the U. T. System Vice Chancellor and General Counsel and the appropriate Executive Vice Chancellor, an institution may adjust the allocation of royalties set forth herein for all creators.

Sec. 3    Intellectual Property Involving Sponsored Research.  Intellectual property resulting from research supported by a grant or contract with the government (federal and/or state), or an agency thereof, with a nonprofit or for-profit nongovernmental entity, or by a private gift or grant to the U. T. System or any U. T. System institution is owned by the Board of Regents.

3.1    Nonconformance with Intellectual Property Guidelines. Administrative approval of such grants and contracts containing provisions inconsistent with this Rule or other policies and guidelines adopted by the Board imply a decision that the value to the U. T. System or any U. T. System institution of receiving the grant or performing the contract outweighs the impact of any nonconforming provisions on the intellectual property policies and guidelines of the U. T. System or any U. T. System institution (Reference Regents' *Rules and Regulations,* Rule 90105, Section 2).

3.2     Conflicting Provisions.  Subject to approval as described in Subsection 3.1 above, the intellectual property policies and guidelines of the U. T. System or any U. T. System institution are subject to, and thus amended and superseded by, the specific terms pertaining to intellectual property rights included in state and/or federal grants and contracts, or grants and contracts with nonprofit and for-profit nongovernmental entities or private donors, to the extent of any such conflict.

3.3     Cooperation with Necessary Assignments.  Those persons subject to this Rule whose intellectual property creations result from a grant or contract with the government (federal and/or state), or any agency thereof, or with a nonprofit or for-profit nongovernmental entity, or by private gift to the U. T. System or any U. T. System institution shall promptly execute and deliver such documents and other instruments as are reasonably necessary for the U. T. System or any U. T. System institution to discharge its obligations, expressed or implied, under the particular agreement.

3.4     Sharing of Royalty Income.  In the event that two or more persons who are entitled to share royalty income pursuant to Section 2.5 of this Rule (or equity pursuant to Regents' *Rules and Regulations,* Rule 90103 concerning equity interests) cannot agree in writing on an appropriate sharing arrangement, the institution's president shall determine that portion of the royalty income to which the creators are entitled under the circumstances and such amount will be distributed to them accordingly. In the event that the creators are located at two or more U. T. System institutions and cannot agree, such royalty (or equity) distribution decision shall be made by the involved institutions' presidents (or their respective designees). In the further event that the involved presidents cannot agree, then the Chancellor (or designee) shall decide and his/her decision shall be binding on the creators.

3.5     Geographical Scope of Protection.  A decision by the U. T. System or any U. T. System institution to seek patent or other available protection for intellectual property covered by Section 2 of this Rule shall not obligate the U. T. System or any U. T. System institution

to pursue such protection in all national jurisdictions. The U. T. System's decision relating to the geographical scope and duration of such protection shall be final.

3.　　**Definitions**

None

4.　　**Relevant Federal and State Statutes**

*Texas Education Code*, Chapter 153 – Centers for Technology Development and Transfer

5.　　**Relevant System Policies, Procedures, and Forms**

Regents' *Rules and Regulations,* Rule 90101 – Rules for Intellectual Property:  Purpose, Scope, Authority

Regents' *Rules and Regulations,* Rule 90103 – Equity Interests

Regents' *Rules and Regulations,* Rule 90104 – Business Participation and Reporting

Regents' *Rules and Regulations,* Rule 90105 – Execution of Legal Documents Related to Intellectual Property

Regents' *Rules and Regulations,* Rule 90106 – Income from Intellectual Property

6.　　**Who Should Know**

Administrators
Faculty
Staff
Students

7.　　**System Administration Office(s) Responsible for Rule**

Office of General Counsel

8.　　**Dates Approved or Amended**

Editorial amendment to Number 4 made December 8, 2014
Editorial amendment to Sec. 2.5 made May 23, 2013

November 10, 2011
Editorial amendments made October 6, 2011
Editorial amendment to Sec. 2.5 made September 1, 2010
February 8, 2007
December 10, 2004

**9.      Contact Information**

Questions or comments regarding this Rule should be directed to:

- bor@utsystem.edu

1.      **Title**

        Equity Interests

2.      **Rule and Regulation**

        Sec. 1      Agreements with Business Entities.  In agreements with
                    business entities relating to rights in intellectual property owned
                    by the Board of Regents, the U. T. System or any U. T. System
                    institution may receive equity interests as partial or total
                    compensation for the rights conveyed. In any such instance, the
                    institution where the intellectual property was created may elect,
                    at its option, to share an equity interest, dividend income, or the
                    proceeds of the sale of an equity interest with the creator(s) in
                    the same manner as royalties are shared pursuant to Regents'
                    *Rules and Regulations*, Rule 90102, Section 2.5. The U. T.
                    System or any U. T. System institution may also receive equity
                    interests in a business entity as consideration for the institution's
                    role as a founder, or for other contributions made to the
                    business entity other than as a licensor, and institution shall not
                    be obligated to share such equity interests with the creator(s).

        Sec. 2      Creator Holding Equity and Managing Conflict of Interest.
                    Employees of the U. T. System or any U. T. System institution
                    who conceive, create, discover, invent, or develop intellectual
                    property may hold an equity interest in a business entity that
                    has an agreement with the U. T. System or any U. T. System
                    institution relating to the research, development, licensing, or
                    exploitation of that intellectual property only so long as the
                    institution where the intellectual property was developed is in full
                    compliance with the requirements to have, implement, and
                    enforce for that employee an effective conflict of interest
                    management plan approved by the institution's president as set
                    forth in the U. T. System's *Procedure for Obtaining Approval of
                    Plan to Manage Conflicts of Interest*
                    (http://www.utsystem.edu/ogc/IntellectualProperty/ProcedureMa
                    nagingConflicts.htm). In any case where actual conflict of
                    interest is found, the employee may be required to divest the
                    equity interest or terminate affected research.

        Sec. 3      Employee Equity Interests.  The U. T. System or any U. T.
                    System institution may, but shall not be obligated to, negotiate
                    an equity interest on behalf of any employee as a part of an
                    agreement between the U. T. System or any U. T. System
                    institution and a business entity relating to intellectual property

conceived, created, discovered, invented, or developed by the employee and owned by the Board of Regents.

3.  **Definitions**

    None

4.  **Relevant Federal and State Statutes**

    *Texas Education Code*, Chapter 153 – Centers for Technology Development and Transfer

5.  **Relevant System Policies, Procedures, and Forms**

    Regents' *Rules and Regulations,* Rule 90101 – Rules for Intellectual Property:  Purpose, Scope, Authority

    Regents' *Rules and Regulations,* Rule 90102 – Intellectual Property Rights and Obligations

    Regents' *Rules and Regulations,* Rule 90104 – Business Participation and Reporting

    Regents' *Rules and Regulations,* Rule 90105 – Execution of Legal Documents Related to Intellectual Property

    Regents' *Rules and Regulations,* Rule 90106 – Income from Intellectual Property

6.  **Who Should Know**

    Administrators
    Faculty
    Staff
    Students

7.  **System Administration Office(s) Responsible for Rule**

    Office of General Counsel

8.  **Dates Approved or Amended**

    Editorial amendment to Number 4 made December 8, 2014
    November 10, 2011
    Editorial amendments made October 6, 2011

February 8, 2007
December 10, 2004

**9.     Contact Information**

Questions or comments regarding this Rule should be directed to:

- bor@utsystem.edu

1.      **Title**

        Business Participation and Reporting

2.      **Rule and Regulation**

        Sec. 1    Approval to Serve as Officer or Director.  Any individual subject
                  to Rule 90101, Section 2 who conceives, creates, discovers,
                  invents, or develops intellectual property may serve, in his/her
                  individual capacity, as a member of the board of directors or
                  other governing board or as an officer or an employee (other
                  than as a consultant) of a business entity that has an agreement
                  with the U. T. System or any U. T. System institution relating to
                  the research, development, licensing, or exploitation of that
                  intellectual property only so long as the institution where the
                  intellectual property was developed is in full compliance with the
                  requirements to have, implement, and enforce for that individual
                  an effective conflict of interest management plan approved by
                  the institution's president as set forth in the U. T. System's
                  *Procedure for Obtaining Approval of Plan to Manage Conflicts of
                  Interest*. In any case where actual conflict of interest is found,
                  the individual may be required to terminate the business
                  relationship or the relevant research.

        Sec. 2    Request for Employee to Serve as Officer or Director.  When
                  requested by the Board of Regents, an employee may serve on
                  behalf of the Board of Regents as a member of the board of
                  directors or other governing board of a business entity that has
                  an agreement with the U. T. System or any U. T. System
                  institution relating to the research, development, licensing, or
                  exploitation of intellectual property, but may not accept any
                  consideration offered for service on such board.

        Sec. 3    Report of Equity Interest and Service as Officer or Director.  Any
                  individual subject to Regents' *Rules and Regulations,* Rule
                  90101, Section 2; Rule 90103, Section 2; and Sections 1 or 2
                  above must report in writing to the president of the institution the
                  name of any business entity in which the person has an interest
                  or for which the person serves as a director, officer, or
                  employee and shall be responsible for submitting a revised
                  written report upon any change in the interest or position held by
                  such person in such business entity. The Office of Technology
                  Commercialization will file a report by October 1 of each year
                  with the Board of Regents for transmittal to the Comptroller of

Public Accounts as required by Section 51.912 and Section 51.005, *Texas Education Code*.

3.    **Definitions**

None

4.    **Relevant Federal and State Statutes**

*Texas Education Code* Section 51.005 – Reports

*Texas Education Code* Section 51.912 – Equity Ownership: Business Participation

*Texas Education Code*, Chapter 153 – Centers for Technology Development and Transfer

5.    **Relevant System Policies, Procedures, and Forms**

Regents' *Rules and Regulations,* Rule 90101 – Rules for Intellectual Property:  Purpose, Scope, Authority

Regents' *Rules and Regulations,* Rule 90102 – Intellectual Property Rights and Obligations

Regents' *Rules and Regulations,* Rule 90103 – Equity Interests

Regents' *Rules and Regulations,* Rule 90105 – Execution of Legal Documents Related to Intellectual Property

Regents' *Rules and Regulations,* Rule 90106 – Income from Intellectual Property

6.    **Who Should Know**

Administrators
Faculty
Staff
Students

7.    **System Administration Office(s) Responsible for Rule**

Office of General Counsel

8.      **Dates Approved or Amended**

Editorial amendment to Number 4 made December 8, 2014
November 10, 2011
Editorial amendments made October 6, 2011
Editorial amendment to Sec. 3 made September 29, 2011
Editorial amendment to Sec. 3 made September 1, 2010
Editorial amendment to Sec. 3 made November 3, 2009
February 8, 2007
December 10, 2004

9.      **Contact Information**

Questions or comments regarding this Rule should be directed to:

- bor@utsystem.edu

1.     **Title**

Execution of Legal Documents Related to Intellectual Property

2.     **Rule and Regulation**

Sec. 1     Execution of Agreements.  Agreements that grant an interest in Board intellectual property, including but not limited to option and license agreements and contracts with corporate sponsors, may be executed and delivered in accordance with the provisions of the Regents' *Rules and Regulations*, Rule 10501, after any required review by the U. T. System Office of General Counsel.

Sec. 2     Agreements That Do Not Conform to the Rules.  Any agreement that deviates substantially from the basic intellectual property Rule of the U. T. System as set out in the Regents' *Rules and Regulations* may be executed and delivered as set forth in Section 1 above if, in the judgment of the institution's president and after any required review by the U. T. System Office of General Counsel, the benefits from the level of funding for proposed research and/or other consideration from a sponsor, licensee, or other party outweigh any potential disadvantage that may result from the Rule deviation.

Sec. 3     Authority to Execute Documents.  The Chancellor, the appropriate Executive Vice Chancellor, or the Vice Chancellor and General Counsel may execute, on behalf of the Board of Regents, legal documents relating to the Board's rights in intellectual property, including, but not limited to, applications, declarations, affidavits, powers of attorney, disclaimers, and other such documents relating to patents and copyrights; applications, declarations, affidavits, affidavits of use, powers of attorney, and other such documents relating to trademarks; and corporate documents related to the formation of new companies. In addition, the institution's president may execute, on behalf of the Board, (a) institutional applications for registration or recordation of transfers of ownership and other such documents relating to copyrights and (b) corporate documents related to the formation of new companies if (i) first reviewed and approved by the U. T. System Office of General Counsel or (ii) first reviewed and approved by institution's outside counsel working under a U. T. System Office of General Counsel-approved outside counsel agreement.

3.      **Definitions**

        None

4.      **Relevant Federal and State Statutes**

        *Texas Education Code*, Chapter 153 – Centers for Technology Development and Transfer

5.      **Relevant System Policies, Procedures, and Forms**

        Regents' *Rules and Regulations,* Rule 10501 – Delegation to Act on Behalf of the Board

        Regents' *Rules and Regulations,* Rule 90101 – Rules for Intellectual Property:  Purpose, Scope, Authority

        Regents' *Rules and Regulations,* Rule 90102 – Intellectual Property Rights and Obligations

        Regents' *Rules and Regulations,* Rule 90103 – Equity Interests

        Regents' *Rules and Regulations,* Rule 90104 – Business Participation and Reporting

        Regents' *Rules and Regulations,* Rule 90106 – Income from Intellectual Property

6.      **Who Should Know**

        Administrators
        Faculty
        Staff
        Students

7.      **System Administration Office(s) Responsible for Rule**

        Office of General Counsel

8.      **Dates Approved or Amended**

        Editorial amendment to Number 4 made December 8, 2014
        Editorial amendments made October 6, 2011
        Editorial amendment to Sec. 3 made September 1, 2010
        February 8, 2007

December 10, 2004

**9.     Contact Information**

Questions or comments regarding this Rule should be directed to:

- bor@utsystem.edu

1.      **Title**

        Income from Intellectual Property

2.      **Rule and Regulation**

        Sec. 1      Use of Income.  The portion of the net income the U. T. System
                    or any U. T. System institution retains from royalties and any
                    other intellectual property-related income shall be used by the
                    U. T. System institution where the income-producing intellectual
                    property originated.

3.      **Definitions**

        None

4.      **Relevant Federal and State Statutes**

        *Texas Education Code*, Chapter 153 – Centers for Technology
        Development and Transfer

5.      **Relevant System Policies, Procedures, and Forms**

        Regents' *Rules and Regulations,* Rule 90101 – Rules for Intellectual
        Property:  Purpose, Scope, Authority

        Regents' *Rules and Regulations,* Rule 90102 – Intellectual Property
        Rights and Obligations

        Regents' *Rules and Regulations,* Rule 90103 – Equity Interests

        Regents' *Rules and Regulations,* Rule 90104 – Business Participation and
        Reporting

        Regents' *Rules and Regulations,* Rule 90105 – Execution of Legal
        Documents Related to Intellectual Property

6.      **Who Should Know**

        Administrators
        Faculty
        Staff
        Students

7.      **System Administration Office(s) Responsible for Rule**

Office of General Counsel

8.      **Dates Approved or Amended**

Editorial amendment to Number 4 made December 8, 2014
November 10, 2011
Editorial amendments made October 6, 2011
December 10, 2004

9.      **Contact Information**

Questions or comments regarding this Rule should be directed to:

- bor@utsystem.edu